PORTLAND, SACO & PORTSMOUTH RAILROAD COMPANY *vs.*
BOSTON & MAINE RAILROAD.

Before the acts of congress making treasury notes a legal tender, two railroad corporations, A. and B., contracted jointly with a third, C., to maintain and operate, exclusively, C.'s road, as C.'s agent; to pay or cause to be paid to C.'s treasurer, semiannually, for the use of C.'s stockholders, three dollars in coin for each and every share of C.'s capital stock; and to retain to their own use the income of the road, after applying so much as might be necessary to make those semiannual payments and defray the expenses of its maintenance and operation. Disputes afterwards arising whether the semiannual payments could be made in treasury notes instead of coin, A.'s directors voted to "authorize C.'s directors to make up their semiannual dividends at the rate of four dollars per share on the half of their capital stock representing the interest of A. in the contract;" provided that C. should relieve A. of all liability, if any, under the contract, to pay in coin; and C.'s stockholders voted "that this company accept the proposition of A. to pay to this company the amount that would be required to increase the semiannual dividends on the half of our capital stock to the rate of four dollars per share," and "in consideration, this company relieve A. from all liability for the payment in coin of any dividend for which such payment may be made by A." *Held*, that these votes did not constitute an independent contract between C. and A.; nor enable C. to maintain thereon an action against A., in the absence of any concurrence of B. in the proposed modification of the original contract.

CONTRACT to recover moneys alleged to be due to the plaintiffs under and by virtue of votes passed by the defendants December 17, 1864, and by the plaintiffs June 5, 1865. Writ dated May 18, 1867. Trial before *Hoar*, J., who, by agreement of the parties, reported the following case for the decision of the full court, with authority to draw such inferences of fact from the statements of the report as they should deem proper.

On April 1, 1847, the plaintiffs, a corporation owning a railroad located in Maine, as party of the first part, and the defendants, with the Eastern Railroad Company, corporations owning

railroads connecting with the plaintiffs' road, as party of the second part, under a statute of this Commonwealth, (St. 1847, *c.* 70,) entered into a written contract, stipulating that the party of the second part, as general agent and attorney of the party of the first part, should maintain, use, operate and employ exclusively the railroad of the latter, and indemnify and save the latter harmless from all expenses of its maintenance and operation, during the continuance of the contract, (which, it was not disputed, was carried into effect and had never been terminated,) and containing also the following articles:

" *Seventhly.* It is further agreed by the said party of the second part, with the said party of the first part, that the said party of the second part will, during the continuance of this agency and contract under this indenture, pay, or cause to be paid, semiannually, in the months of June and December in each year, to the treasurer of the said corporation party hereto of the first part, for the time being, for the use of the stockholders of the said corporation, the sum of three dollars in gold or silver coin of the currency of the United States, for each and every share of the capital stock of the said corporation, the first payment to be made in the month of June next."

" *Tenthly.* It is agreed by the parties hereto, that the said party of the second part, as a compensation for its services in the agency aforesaid, and for its guaranties and agreements to make the payments hereinbefore in that behalf mentioned, and to indemnify and save harmless the said party of the first part, shall receive, retain and have, to the said party of the second part's own use, the full amount of all the rents, profits, income, earnings, and issues of the said railroad, and other property and things, whatsoever, in the charge of the said party of the second part, during the existence of the said agency, after first applying so much as may be necessary to make the semiannual payments aforesaid, and for the current expenses of maintaining operating and employing said railroad."

After the passage of the acts of congress making treasury notes of the United States a legal tender for the payment of debts, disputes arose between the parties to this contract, respect-

ing the semiannual payments made and to be made under the seventh article; and the plaintiffs repeatedly demanded of the defendants and the Eastern Railroad Company payments in coin according to the letter of that article, protested against payment in any other currency, and gave notice that while receiving payment in another currency they waived no rights to payment in coin. During these disputes, the directors of the defendant corporation, on December 17, 1864, passed the following vote:

" *Voted,* that this company hereby authorize the directors of the Portland, Saco and Portsmouth Railroad to make up their semiannual dividends from and after May 31, 1863, to this date, at the rate of four dollars per share, free of United States tax, on the half of their capital stock representing the interest of the Boston and Maine Railroad in the contract dated April 1, 1847, made between the Portland, Saco and Portsmouth Railroad, of the first part, and the Boston and Maine Railroad and Eastern Railroad, of the second part; provided that the Boston and Maine Railroad is relieved by said Portland, Saco and Portsmouth Railroad of all liability, if any such there be, under said contract, to this date, for payment of dividends to the stockholders of said Portland, Saco and Portsmouth Railroad Company in gold or silver coin of the currency of the United States."

This vote having been duly communicated to the plaintiffs, they, a the annual meeting of their stockholders, June 5, 1865, passer' a vote as follows:

" *V, !ed,* that this company accept the proposition of the Boston a d Maine Railroad Company to pay to this company the amou it that would be required to increase the semiannual dividenʤ on the half of our capital stock from and after May 31, 1863, to the rate of four dollars per share, free of United States tax; and that, in consideration, this company relieve the Boston and Maine Railroad Company from all liability for the payment in gold or silver coin of any dividend for which such payment may be made by said Boston and Maine Railroad Ccmpany."

The plaintiffs contended that these two votes, of themselves, or coupled with subsequent acts of the defendants' president,

of which evidence was given which is now immaterial, constituted a contract by which the defendants bound themselves to pay to the plaintiffs the sum sued for, $31,578.94, being the amount necessary to defray the United States tax, and to make up the four payments due to the plaintiffs in December 1863, June and December 1864, and June 1865, to four dollars per share on one half of their capital stock.

There was also evidence, which was not objected to, that in June 1863, and ever since, a dollar of gold and a dollar of silver coin of the currency of the United States were, each, of more value in the market than a dollar of the paper currency of the United States; and that, had the defendants made one half of the three payments of December 1863, June 1864, and December 1864, in gold or silver coin instead of legal tender notes, the stockholders of the plaintiff corporation would have realized sixty thousand dollars more than they actually received from the payments in paper currency.

*F. Goodwin*, for the plaintiffs.

*C. F. Choate*, for the defendants.

WELLS, J. The foundation of the plaintiffs' claim in this case must rest in the contract of 1847. The proposition made by the vote of 1864, even if legally accepted and fully complied with, does not make a complete contract by itself. A dividend, made up in accordance with the terms of the vote, would be payable by the plaintiffs and not by the defendants. There is, upon the face of the proposition, no promise to pay the dividends, or to pay the amount thereof to the plaintiffs. Independent of the original agreement, it would be impossible to derive from that vote any such definite obligation as would be capable of being enforced by an action at law. The vote of acceptance implies such an obligation. But that is the language of the plaintiffs, and cannot operate to engraft upon the proposition of the defendants an obligation which its own terms will not warrant. Both votes were undoubtedly passed with reference to the terms of the original contract of 1847; and in that relation they are sensible and well adapted to effect the evident purpose in view. They serve to modify that contract in

respect of one only of its terms; namely, the amount to be paid for the semiannual rent. By the contract of 1847, which is assumed on both sides to be valid, the defendants and the Eastern Railroad Company have had joint possession and control of the plaintiffs' road, and have received all income from business done upon it; and, in consideration therefor, are jointly bound to " pay, or cause to be paid, semiannually," to the treasurer o. the plaintiff corporation, " for the use of the stockholders of the said corporation, the sum of three dollars in gold or silver coin of the currency of the United States, for each and every share of the capital stock of the said corporation." The vote of the defendant corporation in 1864, with a like vote by the Eastern Railroad Company, accepted by the plaintiffs, would undoubtedly so modify the original contract as to enable the plaintiffs to maintain an action jointly against both corporations for the amount that would be due in accordance with the new arrangement, if the payment of such substituted dividend should be prevented, or the means for its payment withheld by them. As no objection is made by the defendants on account of the severance in this action, we have only to consider how far the proposal of the defendants, to modify the joint contract, can operate against the defendants in the absence of any concurrence of the Eastern Railroad Company in the proposed modification.

Of course no change in the joint contract, as such, can be made without the concurrence of all parties. But the defendants might be subjected to a different measure of damages, in a separate suit for breach of obligation on their part, if it were clear that there was a separate stipulation therefor, not inconsistent with the joint relations subsisting between the several parties; or to damages for breach of an independent supplementary agreement relating to the subject of the joint contract. But, as already indicated, we do not find in the vote of the defendant corporation in 1864, any words which express such an independent agreement, or separate stipulation as to the measure of damages for breach of subsisting obligations. The whole tenor of the vote looks to a change in the joint agreement. In

this connection, the relations previously subsisting between the parties are important to be regarded. By the tenth article of the contract of 1847, it is provided that the party of the second part therein, namely, the Boston and Maine and the Eastern Railroads, shall have to their own use " the full amount of all the rents, profits, income, earnings and issues of said railroad " of the plaintiffs " after first applying so much as may be necessary to make the semiannual payments aforesaid and for the expenses of maintaining, operating and employing said railroad." A vote of the defendant corporation alone, to " authorize the directors of the Portland, Saco and Portsmouth Railroad to make up their semiannual dividends " " at the rate of four dollars per share," purports to authorize that which cannot be carried into effect without the concurrence of the Eastern Railroad Company. There is nothing to indicate any change in the mode of payment, or the source from which the means of payment are to be derived. The vote must therefore be held, as we think, to contemplate payments out of the fund in which the two corporations, as lessees, had a common and equal interest. As the assent of the Eastern Railroad Company would be necessary to enable the purpose contemplated by this vote to be carried into effect, it is to be presumed that the vote itself was adopted with the expectation and intent that it should be made complete by a like vote to be adopted by the Eastern Railroad Company. The dependence of this vote upon a corresponding vote of the Eastern Railroad Company is equally manifest from the terms of the vote, by which the dividends of four dollars per share are authorized only " on the half of their capital representing the interest of the Boston and Maine Railroad in the contract dated April 1, 1847," provided the Boston and Maine Railroad Company is relieved from all liability, &c. To carry such a vote into effect, as a separate and independent vote on the part of the defendant corporation, would be utterly impracticable. The plaintiffs ask us to construe this vote, and its acceptance, as a promise by the defendants to pay to the plaintiffs one half of such sum as would, with the payments already made, make up the amount of four semiannual dividends to

the rate of four dollars per share. But we are unable to find in the terms of the votes, with the aid of all the circumstances of the case, any foundation for such a construction; and we are all of the opinion that they will not warrant the inference of such a separate and independent obligation.

It is unnecessary to consider the other questions discussed at length in the argument; inasmuch as, for the reasons above stated, our conclusion is that the action cannot be maintained in any aspect of the case. *Judgment for the defendants.*